WINTER, Chief Judge:
 

 The issue before us is whether the bankrupt’s obligation to make certain payments to his former wife pursuant to a marital settlement agreement was a debt for “alimony” within the meaning of § 17(a)(7) of the pre-1978 Bankruptcy Act, 11 U.S.C. § 35(a)(7)
 
 [1]
 
 so as to except it from discharge/ Originally, the bankruptcy court was of the view that the debt was alimony and was not discharged, and it persisted in that view after two remands. On the third appeal to it, the district court reversed, ruling that the debt was not alimony.
 

 We reverse the district court and reinstate the judgment of the bankruptcy court.
 

 I.
 

 The first opinion of the district court sets out most of the salient facts,
 
 Meliehar v. Ost,
 
 445 F.Supp. 1162 (D.Md.1977), and we need only to summarize them:
 

 Theodore F. Meliehar and his former wife, now Mrs. Ost, executed a marital settlement agreement in Illinois in April, 1974 when they were still married. So far as pertinent here, the agreement was for Mel-iehar to pay the sum of $66,550 in monthly installments of $550 for a period of 121 months. In the event of the remarriage of the then Mrs. Meliehar, Melichar’s liability for further payments would abate after 108 months; and in the event of the death of either party at any time, liability for fur
 
 *302
 
 ther Davments would abate.
 
 [2]
 
 The parties were divorced in July, 1974 and Mrs. Melichar remarried in August, 1974.
 

 In August, 1976, Melichar instituted a bankruptcy proceeding in the District of Maryland and he sought to be discharged from further obligation under the agreement. Mrs. Ost objected, relying upon 11 U.S.C. § 35(a)(7).
 
 [3]
 
 The bankruptcy judge, after plenary hearing, declared Melichar’s debt under the agreement to be nondis-chargeable as alimony because he found that it was meant “to maintain her economic position ...” On appeal the district court expressed the view that judged by Illinois law the agreement “contains elements of both a straight property settlement (dischargeable in bankruptcy) and of an alimony agreement (which, being based on the common law duty of support, is non-dischargeable).” 445 F.Supp. at 1167. But the district court concluded that the bankruptcy judge’s finding as to the purpose of the agreement was conclusory and too bare to dispose of the case and that the bankruptcy judge “is in a far better position than is this Court to determine the intentions of the parties in the light of . .. this opinion.” 445 F.Supp. at 1170. Accordingly the case was remanded to the bankruptcy judge for further findings and possibly the taking of further evidence.
 

 On remand the bankruptcy judge took no further evidence but he did supplement his previous opinion. He recited the testimony of Melichar that the money was paid to his former wife to be used by her to maintain the same economic position as she had previously maintained during their marriage, and the testimony of the wife that she and her husband budgeted her expenses and arrived at the amount of monthly installments to be paid to her to enable her to support herself while she became settled. As a conclusion of law, the bankruptcy judge stated that the “[tjestimony of the parties indicates that the amount payable to the wife was to maintain her economic position and the Court concludes that it is in the nature of alimony and is non-dischargeable ..."
 

 In a second appeal, the district court again reversed and remanded. While the district court agreed with the implicit finding of the bankruptcy court that Melichar had a legal duty to support his wife, it did not think that the question of whether the parties intended the agreement to fulfill this duty had been specifically found or that the bankruptcy court had considered and determined the meaning of Illinois case law and applied it to the facts of the case.
 

 'On the second remand, the bankruptcy court explored the various types of monetary awards that may be ordered by a court under Illinois law and concluded that “the agreement here contemplated support and maintenance of the wife in line with the definition in Illinois law.” In further amplification, the bankruptcy court said “[although the payments do not continue after the husband’s death, the sum total of the other facts add up to alimony in gross, intended by the parties as support and maintenance of the wife, in discharge of the husband’s common law duty [to support his wife], rather than as a property settlement.” It should be noted that strictly defined, alimony in gross under Illinois law is not modifiable by the Illinois courts and is not extinguished by the remarriage of the spouse receiving payments nor by the death of the spouse making payments.
 
 See Walters v. Walters,
 
 341 Ill.App. 561, 94 N.E.2d 726, aff’d 409 Ill. 298, 99 N.E.2d 342 (1950).
 

 In the third appeal to the district court, it rejected the bankruptcy court’s findings of fact as clearly erroneous and its legal conclusions as incorrect. With regard to the latter, it ruled that the settlement agreement was still ambiguous as to its true nature, that the burden of proving that the payments thereunder constituted alimony rested on the wife who was contesting the
 
 *303
 
 discharge, and that Mrs. Ost had failed to meet that burden so that her objection to the discharge would be dismissed.
 

 II.
 

 We think that the district court was in error in two respects; the second, however, stems from the first.
 

 First, the underlying premise of its view of the case was that, although the controlling issue was the intention of the parties, it was necessary for Mrs. Ost, in order to establish an intention that payments under the agreement were alimony, to qualify strictly the agreement under Illinois law as an agreement to pay alimony. This she was unable to do because the agreement provided for a cessation of payments in the event of Melichar’s death so that it could not be deemed an agreement for alimony in gross. Nor could she qualify it as providing for periodic alimony because the payments might continue after the wife’s remarriage.
 

 We do not doubt that classification of an agreement under state law is an important factor in determining if the parties intended an agreement to provide for the payment of alimony within the meaning of § 35(a)(7). But we do not foreclose the possibility that the agreement may be a hybrid of two means of paying alimony recognized by state law, and the fact that it combines features of both does not automatically destroy the nature of the payments as alimony. The proper test of whether the payments are alimony lies in proof of whether it was the intention of the parties that the payments be for support rather than as a property settlement.
 
 Shacter v. Shacter,
 
 467 F.Supp. 64 (D.Md.),
 
 aff’d without published opinion,
 
 610 F.2d 813 (4 Cir. 1979);
 
 Nichols v. Hensler,
 
 528 F.2d 304 (7 Cir. 1976); 3 Collier on Bankruptcy ¶ 523.15, at 523-111 (1981 ed.)
 

 The district court’s second error was in treating as clearly erroneous the factual finding of the bankruptcy court that the parties intended payments under the agreement as support and maintenance of the wife and not as a property settlement. To a considerable extent it appears that this error stemmed from the district court’s underlying premise that an intention to constitute payments as support could only be proved by showing that the payments qualified as alimony under state law. In any event, the testimony of Melichar and Mrs. Ost both support the bankruptcy court’s finding that the parties intended the payments under the agreement as support: Melichar said that the payments were intended to maintain his wife’s economic position as during marriage and Mrs. Ost said that the payments were made to enable her to meet her living expenses after the divorce as budgeted by Melichar and his attorney. A district court has authority to set aside a finding of fact by a bankruptcy court only if it is clearly erroneous. Bankruptcy Rule 810. In our view the bankruptcy court’s finding was not clearly erroneous.
 

 It follows that the judgment of the district court must be reversed and the order of the bankruptcy court that the debt is not dischargeable reinstated.
 

 REVERSED.
 

 [1]
 

 . Because the bankrupt’s petition was filed in 1976, that provision, rather than its successor in the Bankruptcy Reform Act of 1978, 11 U.S.C. § 523(a)(5), applied. For purposes of this case, the language of the two sections is the same.
 

 [2]
 

 . The agreement also provided for a division of real and personal property, life insurance and support for the issue of the marriage.
 

 [3]
 

 . So far as pertinent, that statute reads:
 

 (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (7) are for alimony due or to become due ....