**In re Mary Ellen COFFMAN, Debtor.**

**Mary Ellen COFFMAN, Movant,**

v.

**Wilson Woodroe COFFMAN, Roger Schlossberg, Trustee, Respondents.**

**Bankruptcy No. 83–A–0638.
Motion No. 83–A–0243A.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Aug. 28, 1985.

Ralph H. France, II, Hagerstown, Md., for debtor/movant.

Justin N. Scharf, Hagerstown, Md., for respondent Coffman.

Bryan Renehan, Rockville, Md., amicus curiae for debtor/movant.

Bruce Kaufman, Baltimore, Md., amicus curiae for respondent/Coffman.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter involves the dischargeability of a debt to a former spouse arising from an award accompanying a Maryland divorce decree. The matter is one of first impression for this court. In view of the importance of the issues to parties who are not parties to this proceeding, *amicus curiae* were appointed to argue and submit briefs on the issues.[1]

### STATEMENT OF FACTS

On April 27, 1982, Mary Ellen Coffman (debtor) filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Reform Act of 1978 (the Code). She subsequently filed a motion to avoid lien pursuant to § 522(f)(1) of the Code, which provides for avoidance of a judicial lien to the extent that it impairs an interest in property which the debtor has exempted from the estate. 11 U.S.C. § 522(f)(1). The subject judicial lien arose from an award made pursuant to a Decree of Divorce entered under Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05 between debtor and her spouse, Wilson Woodroe Coffman, on January 3, 1983, in the Circuit Court for Washington County.[2] The decree included a judgment in

---

1. The court is most appreciative for the time and effort of the distinguished counsel who served as *amicus*, Bruce Kaufman, Esquire, of Baltimore, and Bryan Renehan, Esquire, of Rockville.

2. § 3–6A–05. *Monetary award.*

(a)(1) In granting an absolute divorce or annulment, or at any time within 90 days thereafter, if in its decree granting the divorce or annulment the court has expressly reserved the power to do so, the court shall determine which property is marital property if the division of property is an issue. If the court has reserved the power to make the determination, the court may within the time reserved further extend the time for making the determination with consent of the parties.

(2) Family use personal property or the family home shall not be considered marital property so long as it is the subject of a use and possession order.

(b) The court shall determine the value of all marital property. After making the determination, the court may grant a monetary award as

favor of debtor's spouse in the amount of $2,445.98, described as follows: ·

[a] monetary award in the amount of One Thousand Two Hundred Fifty Dollars ($1,250.00) and an accounting for the contribution of one-half of the mortgage payments and insurance premiums for the marital home owned by the parties as tenants by the entireties for the period from October 1, 1981 to December 31, 1982, in the amount of One Thousand One Hundred Ninety-Five Dollars and Ninety-Eight Cents ($1,195.98); and

IT IS FURTHER ORDERED that alimony and all other relief specifically prayed is hereby denied.

At the hearing on debtor's motion and subsequent cross-motions for summary judgment, counsel agreed that the court would use this proceeding to determine the ultimate issue of dischargeability of the judgment debt under § 523(a)(5)(B) of the Code, which provides:

§ 523. *Exceptions to discharge*

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

## ISSUES PRESENTED

■ The narrow issue before the court is whether either or both elements of the $2,445.98 judgment debt are "for alimony

an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The amount of the award and the method of its payment shall be determined after considering each of the following factors:

(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) The value of all property interests of each spouse;

(3) The economic circumstances of each spouse at the time the award is to be made;

(4) The circumstances and facts which contributed to the estrangement of the parties;

(5) The duration of the marriage;

(6) The age and the physical and mental condition of the parties;

(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

(c) A monetary award made under this section may be reduced to a judgment to the extent that any part of the award is due and owing. Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05 (1984 Repl.Vol.), now reenacted as Md.Fam.Law Code Ann. § 8–201 *et seq. See generally: Grant v.*

*Zich,* 53 Md.App. 610, 456 A.2d 75 (1983), *aff'd,* 300 Md. 256, 477 A.2d 1163 (Md.1984); *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (Md.1982); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (Md.1981); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 410 A.2d 1052 (Md.1980); *Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (Md.Ct.Spec.App. 1984); *Ohm v. Ohm,* 49 Md.App. 392, 431 A.2d 1371 (Md.Ct.Spec.App.1981). As the late Judge John Moore pointed out in *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443, 446 (Md.Ct. Spec.App.1982):

The monetary award is thus an addition to and not a substitute for a legal division of the property accumulated during marriage, according to title. It is 'intended to compensate a spouse who holds title to less than an equitable portion' of that property.... [T]he monetary award is similar to alimony in gross, a lump sum award for the present value of a wife's inchoate marital rights. It is important to realize that the monetary award is purely discretionary. Section 3–6A–05 may not be applicable in every or even most divorce cases. What triggers operation of the statute is the claim that a *division* of the parties' property according to its title would create an inequity which could be overcome through a monetary award.

(Emphasis in original; citation and footnote omitted)

to, maintenance for, or support of" debtor's spouse or child. This court had the opportunity in *In re Grimes*, 46 B.R. 84, 84–86 (BC Md.1985), to review the interrelationship of § 523(a)(5), § 522(c)(1), and § 522(f)(1). If a judgment lien is fixed on what would otherwise be a nondischargeable debt, the debtor may not avoid such lien.

Debtor argues that since the judgment debt arises from a division of marital property and is unrelated to alimony, maintenance, or support, it is therefore a dischargeable debt. Debtor's spouse argues that the monetary award portion of the judgment was determined in the divorce proceedings to be his sole property from an inheritance during the marriage and as such was "separated out" from the marital estate, pursuant to state law, for return to him. Debtor's spouse further argues that the portion of the judgment described as "an accounting for the contribution of one-half of the mortgage payments and insurance premiums for the marital home" was for sums "paid by [him] to maintain the family home for the children, being an allowance in the nature of child support" and that "it was to a former spouse for the maintenance and support of himself and his children as an accounting in the family home as the result of a divorce decree."

### REVIEW OF LAW

The legislative history of § 523(a)(5) instructs that "[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law." H.R. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin. News 1978, 5787, 6320, *reprinted in* 9 Bkr-LEd, LEGISLATIVE HISTORY § 82.17, at 376. The Bankruptcy Code does not define "alimony, maintenance, or support." We therefore turn to the appropriate federal case law. *See In re Harrell*, 754 F.2d 902, 905 (11th Cir.1985); *In re Ploski*, 44 B.R. 911, 913 (BC N.H.1984).

The Fourth Circuit addressed the issue of what constitutes a debt for "alimony" in the context of an objection to dischargeability in the leading case of *Melichar v. Ost*, 661 F.2d 300 (4th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982). While the *Melichar* case was determined under § 17(a)(7) of the pre-1978 Bankruptcy Act, 11 U.S.C. 35A(7), the rule of decision is controlling. Mr. and Mrs. Melichar had executed a marital settlement agreement providing that Mr. Melichar pay his wife $66,550 by monthly installment over a period of 121 months. The installment period would be shortened to 108 months if Mrs. Melichar remarried; liability would end altogether upon the death of either party at any time. The agreement also provided for division of real and personal property, life insurance, and child support. The parties divorced three months thereafter, Mrs. Melichar remarried the following month, and Mr. Melichar filed his petition in bankruptcy two years later. The former Mrs. Melichar objected to Mr. Melichar being discharged from his obligation under their marital settlement agreement.

After the district court thrice reversed the bankruptcy court's findings and conclusions that the marital settlement agreement contemplated support and maintenance, the matter went before the court of appeals.[3] The court of appeals declined to follow the district court's view of the case which was that establishing an intention to pay alimony so as to render the claim nondischargeable required qualifying the agreement under state law as an agreement to pay alimony. *Melichar* at 303. The court of appeals reversed the district court, concluding that while the classification of the agreement under state law was an important factor,

> we do not foreclose the possibility that the agreement may be a hybrid of two means of paying alimony recognized by state law, and the fact that it combines features of both does not automatically

---

**3.** The first district court opinion appears at 445 F.Supp. 1162 (D.Md.1977), the second opinion appears as Appendix 2 to the third opinion published at 7 B.R. 951 (D.Md.1980).

destroy the nature of the payments as alimony. The proper test of whether the payments are alimony lies in proof of whether it was the intention of the parties that the payments be for support rather than as a property settlement. *Shacter v. Shacter,* 467 F.Supp. 64 (D.Md.), *aff'd without published opinion,* 610 F.2d 813 (4 Cir.1979); *Nichols v. Hensler,* 528 F.2d 304 (7 Cir.1976); 3 Collier on Bankruptcy ¶ 523.15, at 523–111 (1981 ed.).

*Melichar* at 303. *Shacter,* cited by the court in support of its conclusion, is instructive on other factors relevant to determining the character of payments under marital agreements.

In *Shacter,* the debtor had entered into a separation agreement to pay his wife a monthly sum "for her support and maintenance" until she died or remarried. 467 F.Supp. 64, 65 (D.Md.1979). On appeal from the bankruptcy court's determination of nondischargeability, the district court viewed debtor's argument as being that the payments required by the separation agreement did not meet the requirements of technical alimony under Maryland law and were therefore in the nature of a property settlement and dischargeable.

The *Shacter* court rejected the proposition that characterization of the payments under state law determined dischargeability of such payments in bankruptcy. 467 F.Supp. at 66. The court reasoned that it should look to the substance of the obligation and proceeded to examine (1) the terms of the agreement; (2) the periodic nature of the payments; and (3) the circumstances existing at the time of the agreement. The court noted that the terms of the agreement provided that the payments were for "support and maintenance" and that the other factors supported such a finding. Accordingly, the court concluded that "[t]he mere fact that the payments do not meet the requirements for technical alimony under state law does not mean the payments cannot be intended for the support of the wife." *Id.*

*Melichar* and *Shacter* are cases in which the obligation had been memorialized in an agreement between the debtor and the non-debtor spouse. *See generally, Annotation,* "Obligation under property settlement agreement between parties as dischargeable in bankruptcy," 74 A.L.R.2d 758. These cases give some guidance in determining the intention of the parties with respect to such obligations incurred by virtue of an agreement, but a fresh look is required for determining the dischargeability of court-imposed monetary awards pursuant to the Maryland Marital Property Act. The Act deals with allocating so-called "marital property" between the parties. In dividing marital property in Maryland, the judge is directed to consider the following factors:

§ 8–205. *[Marital property]—Monetary award.*

(a) *Grant of award.*—After the court determines which property is marital property, and the value of the marital property, the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The court shall determine the amount and the method of payment of a monetary award after considering each of the following factors:

(1) the contributions, monetary and non-monetary, of each party to the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is to be made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(9) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

*Md.Family Law Code Ann.* § 8–205 (1984). Many of these factors are compatible with those entering into awards of alimony [4] and may be compared with the three factors described in *Shacter,* 467 F.Supp. at 66, *supra,* and with the factors listed by the court in *In re Altavilla,* 40 B.R. 938 (BC Mass.1984). In *Altavilla,* the debtor was ordered to pay $10,000 in installments of $166.66 together with another payment for real estate taxes. In finding one segment nondischargeable, the court noted:

Whether an obligation in a divorce decree is in fact one for support and thus nondischargeable depends upon whether the state court or the parties intended to create an obligation to provide for alimony, maintenance or support. *See In re Calhoun,* 715 F.2d 1103, 1109 (6th Cir. 1983). This determination of intent is particularly difficult because the labels used by the parties or the divorce court in denominating obligations as "alimony" or as a "property settlement" are not conclusive, although due consideration of such terms are used in discerning the parties' and the state court's intention. *See Williams v. Williams,* 703 F.2d 1055, 1057–58 (8th Cir.1983). Additionally, pertinent circumstantial evidence of the parties' intentions includes the following: whether the obligation is payable in installments over a substantial period of time or in a lump sum payment; whether the obligation terminates upon an occurrence such as the spouse's remarriage or death; whether the debt was allocated in lieu of a greater allowance of alimony; the length of the marriage; children from the marriage who require support; whether the support would be inadequate absent assumption of the debt; relative earning powers of the parties, both at the time of the divorce and thereafter; and, fault in breaking up the marriage. *See In re Alloway,* 37 B.R. 420, 425 (Bankr.E.D.Pa.1984); *In re Wesley,* 36 B.R. 526, 529 (Bankr.S.D.Ohio 1983); *In re Conrad,* 33 B.R. 601 (Bankr. N.D.Ohio 1983).

*In re Altavilla,* 40 B.R. at 941.

Another perspective is afforded by a recent case where the creditor sought to enforce a monetary award by contempt proceedings and the Maryland Court of Ap-

---

**4.** In 1984, the Maryland Legislature enacted a codification and revision of Maryland law in the Family Law Article following an extensive report by the Commission to Revise the Annotated Code. The required considerations in determining alimony are:

§ 11–106. *[Award]—Determination of amount and duration.*

(b) *Required considerations.*—In making the determination, the court shall consider all the factors necessary for a fair and equitable award, including:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties; and

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive retirement benefits.

peals determined that a monetary award under the Property Disposition Act "does not constitute a form of alimony." *McAlear v. McAlear,* 298 Md. 320, 469 A.2d 1256, 1272 (Md.1984). The first paragraph of the opinion stated the issue:

This case presents the question whether a person can be imprisoned for failure to pay a monetary award granted pursuant to Maryland Code (1974, 1980 Repl. Vol., & 1983 Cum.Supp.), §§ 3–6A–05 and 3–6A–08 of the Courts and Judicial Proceedings Article (monetary award). More particularly, it involves the question whether such a monetary award is a form of alimony and, therefore, not a debt within the scope of the Maryland Constitution, Art. III, § 38.

*Id.* at 1258. The *McAlear* court concluded that,

Neither history nor precedent nor logic supports the wife's contention that a monetary award constitutes a form of alimony. Accordingly, we now hold that a monetary award granted pursuant to § 3–6A–05 of the Courts and Judicial Proceedings Article constitutes a property disposition award that adjusts the marital property interests of the spouses. It does not constitute a form of alimony.

Here the trial court granted an award of alimony and a monetary award. The monetary award constituted an adjustment of the marital property interests of the spouses. It did not constitute a form of alimony within the scope of the Maryland Constitution, Art. III, § 38. Consequently, the monetary award could not be enforced by contempt. Under these circumstances, we shall reverse the order of the trial court.

*Id.* at 1259.

From this ruling it might be argued that all Maryland monetary awards are dischargeable in bankruptcy as divisions of marital property. The syllogism postulates that if the obligation is not enforceable by contempt proceedings which may result in imprisonment, then it cannot be a form of alimony but instead must be a debt within the scope of Maryland Constitution Art. III, § 38. The Maryland Court of Appeals has held that monetary awards are not enforceable by imprisonment, therefore, they are not alimony and are dischargeable in bankruptcy.[5] Let us examine that proposition.

■ We know from *Melichar* that classification under state law is an important factor in determining whether a debt under an agreement is dischargeable under 11 U.S.C. § 523(a)(5). When a Maryland circuit court judge determines a monetary award after considering the factors discussed above, could not a portion of the award be intended by the court as support and maintenance for the creditor spouse?

■ Reviewing the legislative history of the 1980 Alimony Act and the Property Disposition Act as well as Maryland's history, the *McAlear* court recognized that property disposition and alimony have evolved as separate and distinct concepts. Moreover, the General Assembly has enacted separate statutes governing the disposition of property and the award of alimony, each with a different purpose.

"... The purpose of the Property Disposition Act is to provide for an equitable distribution of property acquired during the marriage and, therefore, to compensate for the monetary and nonmonetary contributions of the spouses made before the dissolution of the marriage. The purpose of the 1980 Alimony Act is to provide for an appropriate degree of spousal support in the form of alimony after the dissolution of the marriage. Most important, in each of the separate statutes enacted, the General Assembly specifically uses both the terms "monetary award" and "alimony" and consistently treats these concepts as separate and distinct. Viewed in this context, it is apparent that the mere facts that the

---

**5.** *See In re Hall,* 40 B.R. 204 (BC M.D.Fla.1984), reading *McAlear* to close door on problem. This court disagrees that *McAlear* is controlling in all events or compels the finding that a marital award is dischargeable.

General Assembly established an interrelationship between a monetary award and an award of alimony, that such awards now possess some common characteristics, and that a monetary award may be granted when alimony is not are insufficient, in and of themselves, to establish that the General Assembly intended that a monetary award be a form of alimony or a substitute for alimony."
*McAlear*, 469 A.2d at 1271. *Melichar* appears to compel this result. Regardless of what the label is under state law, it is conceivable that all or part of a monetary award by a Maryland court might not be dischargeable as it provides for the support of the creditor spouse.

 The court has consulted such cases as *Melichar v. Ost*, 661 F.2d 300 (4th Cir.1981) and *Shacter v. Shacter*, 467 F.Supp. 64 (D.Md.1979), *aff'd* without published opinion, 610 F.2d 813 (4th Cir.1979), as well as others,[6] in constructing a list of the factors considered in distinguishing, in the context of a court order, between alimony and support on one hand and property division on the other. In determining where to draw the line in an agreement, the court looks first to the intention of the parties. If the court's intent can be divined in a divorce or annulment decree, that would likewise be a factor. The following is a list of factors to guide further consideration for the bankruptcy court:

1. Whether there was an alimony award entered by the state court.

2. Whether there was a need for support at the time of the decree; whether the support award would have been inadequate absent the obligation in question.

3. The intention of the court to provide support.

4. Whether debtor's obligation terminates upon death or remarriage of the spouse or a certain age of the children or any other contingency such as a change in circumstances.

5. The age, health, work skills, and educational levels of the parties.

**6.** (The numbers following each citation correspond to the listed factors and indicate consideration thereof.)

*Shaver v. Shaver*, 27 B.R. 452 (BC Nev.1983), *aff'd* 736 F.2d 1314 (9th Cir.1984) (4, 6, 7, 12, 14)

*In re Calhoun*, 715 F.2d 1103 (6th Cir.1983) (2, 7, 11, 12)

*In re Pody*, 42 B.R. 570, BLD ¶ 70052 (BC N.D.Ala.1984) (2, 5, 11, 12, 17)

*In re Mencer*, 50 B.R. 80, 13 BCD 198 (BC E.D.Ark.1985) (10, 11)

*In re Anderson*, 21 B.R. 335, BLD ¶ 6877f3 (BC S.D.Calif.1982) (2, 4, 5, 6, 8, 12, 13, 14)

*Matter of Taff*, 10 B.R. 101, 7 BCD 493, BLD ¶ 67938, 4 CBC 2d 65 (BC Conn.1981) (4, 8)

*Matter of Basile*, 44 B.R. 221, BLD ¶ 70148 (BC M.D.Fla.1984) (2, 4, 5, 6, 11, 12, 14)

*In re Harrell*, 13 B.R. 302, 7 BCD 1408 (BC N.D.Ga.1981) (2)

*In re Bedingfield*, 42 B.R. 641 (S.D.Ga.1983) (2, 6, 11)

*In re Seidel*, 48 B.R. 371 (BC C.D.Ill.1984) (2, 6, 11, 12, 14)

*In re Cowley*, 35 B.R. 520 (BC Kan.1983) (11)

*In re Brown*, 37 B.R. 295 (BC W.D.Ky.1983) (2, 11, 12, 14)

*In re Altavilla*, 40 B.R. 938 (BC Mass.1984) (2, 4, 6, 10, 11, 14, 16, 17)

*In re Proctor*, 42 B.R. 537 (BC E.D.Mo.1984) (11, 14)

*In re Knight*, 29 B.R. 748 (BC W.D.N.C.1983) (12, 14)

*In re Ferradino*, 14 B.R. 196, BLD ¶ 68353 (BC Nev.1981) (2, 4, 6)

*In re Ploski*, 44 B.R. 911 (BC N.H.1984) (4, 13)

*In re Rhodes*, 44 B.R. 79 (BC N.M.1984) (17)

*In re Bell*, 47 B.R. 284 (BC E.D.N.Y.1985) (2, 5, 11, 12, 14, 17)

*In re Seablom*, 45 B.R. 445 (BC N.D.1984) (2, 4, 5, 11, 12, 16)

*In re Wesley*, 36 B.R. 526 (BC S.D.Ohio 1983) (2, 5, 6, 8, 10, 12, 14)

*In re Williams*, 38 B.R. 224 (BC N.D.Okla.1984) (4, 8, 12)

*In re Wiley*, 27 B.R. 21 (BC Ore.1982) (8, 10, 11, 12, 14)

*In re Alloway*, 37 B.R. 420, BLD ¶ 69764, (BC E.D.Pa.1984) (2, 4, 6, 8, 10, 12, 17)

*In re Cribb*, 34 B.R. 862 (BC S.C.1983) (2)

*Benz v. Nelson*, 16 B.R. 658, BLD ¶ 68569 (BC M.D.Tenn.1981), *modified sub nom In re Nelson*, 20 B.R. 1008 (M.D.Tenn.1982) (2, 3, 4, 6, 8, 9, 10, 12, 13, 14)

*In re Vickers*, 24 B.R. 112, BLD ¶ 68867, 7 CBC 2d 849 (BC M.D.Tenn.1982) (2, 3, 4, 6, 8, 9, 10, 12, 13, 14)

*In re Holland*, 48 B.R. 874 (BC N.D.Tex.1984) (2, 5, 8, 11, 12, 14, 17)

*In re Warner*, 5 B.R. 434, 6 BCD 788, BLD ¶ 67631 (BC Utah 1980) (2, 10, 11, 14)

*In re Sposa*, 31 B.R. 307 (BC E.D.Va.1983)

*Matter of Chambers*, 36 B.R. 42 (BC W.D.Wisc.1984) (12)

6. Whether the payments are made periodically over an extended period or in a lump sum.

7. The existence of a legal or moral "obligation" to pay alimony or support.

8. The express terms of the debt characterization under state law.

9. Whether the obligation is enforceable by contempt.

10. The duration of the marriage.

11. The financial resources of each spouse, including income from employment or elsewhere.

12. Whether the payment was fashioned in order to balance disparate incomes of the parties.

13. Whether the creditor spouse relinquished rights of support in payment of the obligation in question.

14. Whether there were minor children in the care of the creditor spouse.

15. The standard of living of the parties during their marriage.

16. The circumstances contributing to the estrangement of the parties.

17. Whether the debt is for a past or future obligation, any property division, or any allocation of debt between the parties.

18. Tax treatment of the payment by the debtor spouse.

In weighing the above factors, one must keep in mind the admonition of Judge Joe Lee in his *Case Comment*, 50 Am.Bankr. L.J. 175, 177 (1976):

> In deciding whether a particular debt of the bankrupt qualifies as alimony, maintenance or support so as to be nondischargeable in bankruptcy the bankruptcy court is confronted with two conflicting policy considerations, that of requiring the bankrupt to fulfill obligations to his ex-wife arising out of the broken marriage contract and that of giving the bankrupt a fresh start unencumbered by the burdens of preexisting debt arising from other contracts. Obviously, neither of these competing policy considerations should override the other.

*Cf. In re Harrell*, 754 F.2d 902, 904 (11th Cir.1985).

■ There remains the consideration of the facts of this case in light of the aforementioned authorities. The January 3, 1983 order of the circuit court involves two parts. The first part is a monetary award in the amount of $1,250.00 and, as debtor's spouse states in his answer to the motion to avoid judicial lien is "deemed [his] sole property from an inheritance during the marriage directly traceable to his mother[']s estate, which he put into the house." There is no aspect of this part that identifies it through any factor as an award of alimony, maintenance, or support.

■ The second part, awarding $1,195.98, is an accounting for mortgage and insurance payments made by debtor's spouse for the period October 1, 1981, to December 31, 1982, while the parties still held the property as tenants by the entirety. (The parties' divorce was entered January 7, 1983.) There is nothing in the record indicating that this part contains any element of support. The basis for this award grows out of the provisions of Maryland law for contribution among co-owners. Maryland law had been that although either the husband or wife made a payment on a mortgage for their joint benefit, there was nevertheless presumed to be an equal responsibility for such payment. The payments made by the husband therefore would be regarded as gifts to the wife to the extent that they relieved her of an equality of contribution. *Cunningham v. Cunningham*, 158 Md. 372, 148 A. 444, 447 (Md.1930). However, in the more recent case of *Crawford v. Crawford*, 293 Md. 307, 443 A.2d 599 (1982), the court stated:

> We hold today that this presumption arises only when the parties are living together as husband and wife. When they are not, even though they may be legally married, the reason for the presumption, that married couples usually contribute to physical, emotional, and financial efforts for their mutual benefit, obviously does not apply.

443 A.2d at 601. It is clear that the $1,195.98 portion of the monetary award represents reimbursement for Mr. Coffman's contribution to the mortgage payments made prior to the divorce and no more.

In summary, the court finds that the circuit court decree had one component which was a reimbursement for an inheritance belonging to Mr. Coffman and a second component consisting of an allowance for contribution. These components constituted a pure property division and in no manner did they represent alimony, maintenance, or support. The circuit court specifically denied alimony. The payments ordered were not to be periodic or contingent and both parties had custody of a child. The court concludes from this extended exercise that, while there may be a very faint possibility of some case somewhere in which such a monetary award is not dischargeable, this is not to be that one.

The court concludes that the circuit court award impairs an exemption to which the debtor would have been entitled and therefore the lien will be avoided by separate order.