**In re Gregory Ferdinand BARAC, Debtor.**

**Vivian Joann BARAC and Richard D. Sabbert, Plaintiffs,**

v.

**Gregory Ferdinand BARAC, Defendant.**

Bankruptcy No. 84–01793(2).

Adv. No. 84–0439(2).

United States Bankruptcy Court,
E.D. Missouri, E.D.

Nov. 26, 1985.

Richard D. Sabbert, St. Charles, Mo., for plaintiffs.

John C. Maxwell, St. Charles, Mo., for defendant.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### FACTS

On October 5, 1984, Debtor filed his voluntary Chapter 7 petition. On December 27, 1984, Debtor's former spouse ("Vivian") and her attorney ("Sabbert") timely filed a complaint objecting to Debtor's discharge and seeking to except from discharge certain debts. On February 27, 1985, the issue was joined by the filing of Debtor's Answer. On May 7, 1985, the proceeding was tried and taken under submission. Thereafter, the parties filed briefs. On May 3, 1985, the Court granted Debtor his discharge.

The specific debts which Plaintiffs seek to except from discharge were incurred by Debtor during and after his marriage to Vivian. In order to understand the nature of these debts, a brief review of Debtor and Vivian's marital and post-marital history is necessary.

On October 1, 1981, Debtor and Vivian's marriage ended in divorce. The marital settlement agreement incorporated into the dissolution decree contained several provisions pertinent to the case at bar. These provisions and the Court's findings with respect to them are as follows.

First, Debtor was to pay Vivian $150 per week per child as and for maintenance and support of their two minor children.

Second, Debtor was to pay Vivian $100 per week as and for her maintenance. Both Vivian and Debtor testified that this amount was sufficient for her maintenance, and the Court also so finds.

Third, Debtor assumed all indebtedness owed by himself and Vivian prior to June 1, 1981. While the marital settlement agreement did not specifically refer to any particular debt, Vivian alleged that an obligation existed to Mercantile Bank as of that date.

At trial, the evidence showed that Debtor had established a line of credit at the bank sometime in 1959 and that the credit line was used by Debtor and Vivian both before and for some time after their divorce. The Court finds that the amount due as of June 1, 1981 was $1,689.51.

Conflicting evidence was presented as to how this credit line was used. Vivian con-

tended that it was used to pay the house mortgage and utilities, but Debtor denied that it had ever been so used. Neither party presented any documentary evidence such as cancelled checks to resolve this conflict. The Court finds that the evidence presented by Vivian is not sufficiently credible to resolve this conflict in her favor.

Fourth, Debtor agreed to maintain in full force and effect a then existing or similar life insurance policy naming Vivian as beneficiary. From the testimony at trial, the Court finds that the purpose of this policy was to provide for support of Debtor's minor children in case of his death.

Shortly after their divorce the then existing policy lapsed for non-payment of premium. Debtor subsequently remarried and purchased a new life insurance policy naming his new wife and minor children as beneficiaries. Since his purchase of the new policy, Debtor has suffered a series of heart attacks and is apparently no longer insurable. Notwithstanding that she is not named a beneficiary on this new policy, Vivian testified that her concern on this point would be satisfied by periodically receiving evidence that the new policy continues in effect.

Fifth, Debtor agreed to indemnify and hold Vivian harmless from any loss, cost, or expense, including reasonable attorney's fees, incurred by her as a result of Debtor's failure to perform any of the terms of the marital settlement agreement.

It is undisputed that the Debtor has not performed the marital settlement agreement according to its terms. Indeed, approximately eighteen months after his divorce from Vivian, Debtor filed a Motion To Modify in state court. On January 19, 1984, the state court found that there had been a substantial and continuing change of circumstances since the entry of the dissolution decree. The state court therefore reduced child support to $100 per week per child and abolished maintenance. The state court made each modification retroactive to September 8, 1983.

Notwithstanding the fact that the state court reduced child support and abolished maintenance, it ordered Debtor to pay Sabbert $750 as Vivian's attorney's fees and taxed costs against Debtor. The state court gave no explanation for its award of attorney's fees and no explanation of it was offered at the trial of this cause.

Debtor appealed the trial court's modification order, apparently on the theory that the child support even as modified was excessive. On February 19, 1985, the state appellate court affirmed the trial court's order. *Barac v. Barac*, 684 S.W.2d 869 (Mo.App.1984). On August 28, 1984, Vivian filed in the trial court her motion for costs and attorney's fees relating to Debtor's appeal. Vivian also moved the appellate court for damages for what she considered to be Debtor's frivolous appeal. Debtor moved to dismiss Vivian's trial court motion, but no determination with respect to any of these motions has yet been made.

During the same period that Debtor successfully sought modification of his child support and maintenance obligations, Vivian sought to hold Debtor in contempt for not complying with various terms of the settlement agreement. On January 24, 1984, the state court entered an interlocutory order finding Debtor to be in arrears with respect to his child support and maintenance in the amount of $6,169, in default on his Mercantile Bank obligation in the amount of $1,600, and to be in default on his obligation to maintain the life insurance policy. The court entered a judgment in favor of Vivian for the amount of the delinquent child support and maintenance and the Mercantile Bank obligation, but stayed execution pending appeal. The state court, however, did award Sabbert $400 in attorney's fees. No further substantive orders on this matter have been entered by the state court.

In addition to objecting to Debtor's discharge, Plaintiffs seek to except from discharge the following:

(1) $6,169.00 owed by Debtor for child support and maintenance as of January

24, 1984 and any amounts for child support which have accrued since that date;

(2) $1,689.51 owed by Debtor to Mercantile Bank as of June 1, 1981;

(3) Debtor's obligation to maintain life insurance;

(4) $750.00 awarded to Sabbert as Vivian's attorney's fees on the modification order;

(5) $400.00 awarded to Sabbert as Vivian's attorney's fees on the contempt motion;

(6) Any sums which may be awarded by the state trial court to Sabbert as Vivian's attorney's fees on the motion for costs and attorney's fees relating to Debtor's unsuccessful appeal of the modification order; and

(7) Any sums which may be awarded to Vivian or Sabbert by the state appellate court in the event it finds Debtor's appeal of the modification order to have been frivolous.

## DISCUSSION

### JURISDICTION

Under 28 U.S.C. § 157(b)(2)(I), (J), this Court may hear and determine objections to discharge and determinations as to the dischargeability of particular debts, provided that such proceedings are referred to the Court. As the district court has by its Local Rule 29 so referred them, the Court has the requisite jurisdiction to hear and determine Plaintiffs' complaint.

### DEBTOR'S DISCHARGE

Plaintiffs' complaint contains no allegations which would justify the Court in denying or revoking Debtor's discharge. Moreover, Plaintiffs presented no evidence at trial relevant to the denial or revocation of Debtor's discharge. Bankruptcy Rule 4005 states that "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving his objection." As Plaintiffs have not sustained their burden on the issue of discharge, the Court will not disturb Debtor's discharge.

### EXCEPTIONS TO DISCHARGE

Debtor's petition was filed prior to October 8, 1984, the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Prior to the amendments, Section 523(a)(5) of the Bankruptcy Code provided:

"A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The Court must apply this statutory language to the facts of the case at bar in order to determine whether any of the debts which plaintiffs seek to except from discharge are, in fact, non-dischargeable. If a particular debt is a support obligation, it is not dischargeable. If, on the other hand, it is part of a property settlement or has some other purpose, then it is dischargeable. The question is one of federal bankruptcy law. Thus, while the Court accords some deference to state law and the characterizations of state courts as to whether a particular item is support or property settlement, the Court reserves the final determination for itself. In making that final determination, the Court will look to the substance of what the parties and state courts have done in resolving marital issues, not merely to the labels which may have been attached to these resolutions. In short, if and only if the function of the award is support is the debt not dischargeable. *In re Williams*, 703 F.2d 1055, 1056 (8th Cir.1983).

Finally, it should be made clear that the burden of proof is on the party asserting that a debt is non-dischargeable. This is as it should be, since every debt which a debtor must continue to bear impedes his ability to make good on the fresh start which the Bankruptcy Code provides him. *In re Lineberry*, 9 B.R. 700 (Bkrtcy.W.D. Mo.,1981).

## CHILD SUPPORT AND MAINTENANCE

Vivian seeks to except from discharge $6,169.00 which Debtor owed her for child support and maintenance as of January 24, 1984 and any amounts owed her as child support since that date. At trial, Debtor did not contest the non-dischargeability of this obligation. The Court finds that the debt serves a support function, and, therefore, concludes that it is non-dischargeable.

## THE MERCANTILE BANK OBLIGATION

As of June 1, 1981, Debtor owed Mercantile Bank $1,689.51. The Court finds that by the terms of his separation agreement with Vivian, Debtor had impliedly agreed to pay this debt and hold Vivian harmless from it. A promise to pay a joint debt can create a non-dischargeable obligation provided its function is support. That function can be inferred where either the support granted would be inadequate but for the debt assumption or where the debt itself was initially incurred to provide the necessities of everyday life. *In re Williams, supra*, at 1057; *In re Harke*, 24 B.R. 645, 648–649 (Bkrtcy.E.D.Mo.1982). The crucial question, therefore, is what function Debtor's assumption of the Mercantile debt was meant to serve.

Had Vivian's child support or maintenance been inadequate without Debtor's assumption of this debt, the Court would be inclined to conclude that the obligation was non-dischargeable, especially if it were convinced that the obligation had been incurred to provide Vivian and her minor children with such necessaries as shelter and food. The testimony of both Vivian

and Debtor, however, was that her maintenance award was sufficient. No testimony was given that the child support award was anything less than sufficient as well. Moreover, Vivian failed to carry her burden of proof as to what necessaries the Mercantile obligation related. Although she testified that the Mercantile credit line had been used to pay for the house mortgage and utilities, the Debtor vigorously denied that and no documentary evidence by way of cancelled checks was presented to the Court. Accordingly, the Court concludes that Debtor's assumption of the debt to Mercantile Bank was part of Debtor and Vivian's division of property and, hence, is dischargeable.

## THE INSURANCE POLICY

By the terms of Debtor's settlement agreement, he was to maintain in force an existing life insurance policy naming Vivian as beneficiary. The policy was cancelled for non-payment of premium, but the Debtor has apparently obtained another insurance policy on his life which names his minor children and his new wife as beneficiaries. As the Debtor has suffered from serious health problems in recent years, it is probably true that he can obtain no additional insurance coverage, but can at best continue to maintain his present policy in force.

Where insurance is in the nature of security for the payment of support or maintenance, it serves a support function and the obligation to maintain it is non-dischargeable. *In re Lineberry, supra*, at 709. Since the Court has found that the life insurance provision of the separation agreement was intended as security for child support and maintenance, the Court concludes that Debtor's obligation to maintain his presently existing life insurance policy naming his two minors beneficiaries is non-dischargeable.

## ATTORNEY'S FEES

Section 452.355, R.S.Mo., provides that:

"The Court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name."

Pursuant to this statute, the state court awarded $750 to Sabbert as Vivian's attorney's fees on the modification order. Though the state court did not explain why it awarded these attorney's fees when it abolished maintenance and reduced child support, and while the evidence presented at trial provided no enlightenment on this matter, it is evident that but for Vivian's defense of Debtor's motion to modify, Debtor's minor children might well have lost an important source of their support. As these attorney's fees were necessarily incurred in connection with preserving that child support, the Court holds them to be non-dischargeable. *See, In re Certo*, 33 B.R. 561 (Bkrtcy.S.D.Fla.1983); *In re Haast*, 27 B.R. 93 (Bkrtcy.S.D.Fla.1983).

The same reasoning would not apply to the $400 awarded to Sabbert as Vivian's attorney's fee on the contempt motion. This is because that motion not only dealt with support and maintenance, but also the debt to Mercantile Bank which the Court has held to be dischargeable. Plaintiffs presented no evidence which the Court could use to allocate some portion of the award to the non-dischargeable support and maintenance portions of the order. As Plaintiffs have the burden of proof on this issue, and as they have not sustained it, the Court holds that the $400 is dischargeable.

Plaintiffs also seek to except from discharge any amounts which the trial court may in the future award to them for costs and attorney's fees incurred by them in defending Debtor's appeal of the modification order. For the reasons just stated, in the event that the state trial court makes any award to plaintiffs in this regard, it will be non-dischargeable.

Finally, Plaintiffs seek to except from discharge any damages which may be awarded to them by the state appellate court if that court finds Debtor's appeal of the modification order to have been frivolous. Rule 84.19 of the Missouri Rules of Civil Procedure provides that "if an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." "Rule 84.19 has two purposes: First, to prevent appellate dockets from being cluttered with meritless appeals at the cost of delaying those which have merit and, second, to compensate respondents for the costs of responding to meritless appeals." *Jensen v. Jensen*, 670 S.W.2d 16, 18 (Mo.App.1984). Given that the primary purpose of such an award has nothing whatever to do with alimony, maintenance, or child support, but rather with judicial administration, the Court must conclude that were any award made under Rule 84.19, it has been discharged by Debtor's bankruptcy.

An order consistent with this opinion will be entered this date.